Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6029 | **DATE** | 1/12/2001 |
| **CASE TITLE** | T. Michael Abinanti, et al. vs. Leggett & Platt, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to stay trial and to compel arbitration [4-1, 4-2] is granted. These proceedings are stayed until such time as arbitration has been had in accordance with the terms of the Stock Purchase Agreement.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 15 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 10 |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | 01 JAN 12 PM 4:25 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

T. MICHAEL ABINANTI, )
SHARON ABINANTI, GRANT L. )
GILLIHET, WILLIAM P. GODDU )
and THOMAS A. MODROWSKI, )
)   No. 00 C 6029
      Plaintiffs, )
)   Judge Ruben Castillo
v. )
)
LEGGETT & PLATT, INCORPORATED, )
)
      Defendant. )

DOCKETED
JAN 1 6 2001

## MEMORANDUM OPINION AND ORDER

T. Michael Abinanti, Sharon Abinanti, Grant L. Gillihet, William P. Goddu, and Thomas A. Modrowski ("Plaintiffs") filed a lawsuit against Leggett & Platt, Incorporated ("Defendant") in the Circuit Court of Cook County, Illinois, alleging breach of contract, tortious interference, bad faith, and slander. Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction. Currently before this Court is Defendant's Motion to Stay Trial and to Compel Arbitration.

Because this Court finds that the relevant Stock Purchase Agreement mandates Plaintiffs' claims to be arbitrated, Defendant's motion is granted.

### RELEVANT FACTS

Plaintiffs are five former shareholders and employees of Met Displays, Inc. ("Met"), a manufacturer of store display fixtures. In June 1999, Defendant, which is engaged primarily in the business of manufacturing store fixtures, acquired Met through a Stock Purchase Agreement ("SPA"). Pursuant to the SPA, each of the Plaintiffs became an employee of Defendant via individual Employment Agreements.

The SPA contains an arbitration clause, in § 8.15, entitled "Dispute Resolution":

> Except as provided in Section 1.3 (relating to the calculation of the Purchase Price), any dispute, controversy or claim arising out of or relating to this Agreement or any agreement contemplated hereby shall be settled by binding arbitration in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. The place of arbitration shall be Chicago, Illinois. L&P will designate one arbitrator and the Shareholders will designate one arbitrator. The arbitrators so chosen will appoint a third neutral arbitrator within 30 days of their designation. The arbitrators' decision shall be final and binding on all parties to the dispute and may be entered in any court having jurisdiction. The arbitrators shall have the power to award costs and expenses of the prevailing party in the dispute, but shall not be required to do so.

(R. 6, Pls.' Resp. to Def.'s Mot. to Stay Trial and to Compel Arbitration, Ex. A, Verified Compl., Ex. A, Stock Purchase Agreement at § 8.15 ("SPA").)

Section 1.3, the only section in the SPA exempted from the arbitration clause, relates to the purchase price prior to the Closing Date of the SPA. Section 1.3 requires that within 60 days of the Closing Date, Defendant was to prepare a balance sheet of the Company to be used to calculate the values for Debt and Working Capital (the "Closing Balance Sheet"). The Closing Balance Sheet was to be prepared in accordance with United States generally accepted accounting principles and was to be used to calculate the actual Purchase Price. Section 1.3 also states that the shareholders were to have thirty days after the preparation of the Closing Balance Sheet to give written Notice of Disagreement, specifying in reasonable detail the nature and dollar amount of any disagreement so asserted, to Defendant. If Plaintiffs failed to give such notice, the Closing Balance Sheet was to become final and binding on the parties. Furthermore, § 1.3 specifies that "[a]ny determination expressly set forth on the Closing Balance Sheet which is not objected to in the Notice of Disagreement shall be deemed final and binding upon the

2

parties upon delivery of the Notice of Disagreement." If the parties failed to resolve matters themselves, remaining disputes over the "Closing Balance Sheet" were ultimately to be resolved by a "big-five" accounting firm, which would "make a final determination of the Closing Balance Sheet and the Purchase Price in accordance with the guidelines and procedures set forth in [the SPA]." (*Id.* at § 1.3.)

After Plaintiffs were terminated by Defendant, they filed a lawsuit in the Circuit Court of Cook County, alleging that: (1) Defendant breached the SPA as well as each Plaintiff's Employment Agreement, as amended; (2) Defendant tortiously interfered with Met and the terminated employees by, among other things, directing Met to terminate Plaintiffs; (3) Defendant took these termination actions in bad faith; and (4) Defendant slandered Plaintiffs when it published untrue statements involving Plaintiffs' purported misconduct. Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant removed the lawsuit to this Court on the basis of diversity jurisdiction. Defendant then filed a Motion to Stay Trial and to Compel Arbitration. Defendant contends that the SPA requires Plaintiffs to arbitrate all of their claims.[1] Plaintiffs, on the other hand, argue that Defendant's Motion to Compel Arbitration should be denied because their claims fall outside the SPA arbitration provision.[2]

---

[1] The parties agree that the SPA is a valid contract.

[2] In addition, in response to Defendant's claim that Plaintiffs' counsel is conflicted out of representing them in this case, Plaintiffs argue that this Court should reserve for itself the issue whether Plaintiffs' counsel should be disqualified. While Defendant alludes to a conflict of interest in its Motion to Stay Trial and to Compel Arbitration, it did not ask this Court to disqualify Plaintiffs' counsel. Therefore we decline to do so. This Court does advise Plaintiffs' counsel to consider whether stepping aside may be ethically required.

3

## ANALYSIS

### I. LEGAL STANDARDS

Whether an issue is referable to arbitration, such that a stay and/or an order to compel arbitration is appropriate, is a question of contract interpretation, for "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Matthews v. Rollings Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995) (quoting *Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 390 (7th Cir. 1984)). However, "once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause should be resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) (citing *Flexible Mfg. Sys. Pty., Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 99 (7th Cir. 1996)). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, has established a federal policy favoring arbitration, and the courts are required to "rigorously enforce agreements to arbitrate." *Washburn v. Societe Commerciale de Reassurance*, 831 F.2d 149, 150 (7th Cir. 1987) (citations omitted). Thus, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Matthews*, 72 F.3d at 53 (citations omitted).

### II. STOCK PURCHASE AGREEMENT

In their response, Plaintiffs do not object to Defendant's invocation of the FAA in its Motion to Stay Trial and Compel Arbitration. This Court agrees that §§ 3 and 4 of the FAA grant us the authority to issue a stay of litigation and to compel Plaintiffs' claims to be arbitrated. 9 U.S.C. §§ 3 and 4. Because Defendant is a Missouri corporation and Met is an Illinois corporation, the SPA is clearly a transaction involved in commerce, as required by the FAA. *See* 9 U.S.C. § 2. *See also Messing v. Rosenkrantz*, 872 F. Supp. 539, 540 n. 2 (N.D. Ill. 1995)

(citation omitted) (stating that "involving commerce" requirement in 9 U.S.C. § 2 "is to be construed very broadly").

The issue in this case is simply whether Plaintiffs' claims fall within the arbitration agreement found in § 8.15 of the SPA. Plaintiffs argue that their causes of action relate to the calculation of the Purchase Price, and therefore do not fall within the arbitration provision, pointing out that § 8.15 explicitly excludes from arbitration § 1.3 ("Purchase Price Paid at Closing"). In their complaint, Plaintiffs maintain that they were terminated so Defendant could avoid paying $6.1 million of the $48 million purchase price that was guaranteed to them, as minority shareholders, via a performance-based bonus pool. Thus, Plaintiffs argue, because their claims concern the purchase price, they fall within § 1.3 of the SPA and are not subject to arbitration.

We disagree. As discussed previously, § 1.3 describes the *calculation* of the purchase price. At the time this lawsuit was filed, the purchase price already had been calculated, and both parties had agreed to it. Therefore it is hard to imagine how Plaintiffs' claims could concern the calculation of the purchase price. Furthermore, the performance-based bonus pool at issue in Plaintiffs' complaint is not mentioned anywhere in § 1.3, but rather, explained in § 1.5. Section 1.5 states that "[t]he Bonus Pool will be used to pay employee bonuses of up to $6,100,000 in cash based on the Company's earnings for each of the three years ending June 30, 2000, June 30, 2001, and June 30, 2002." Thus, Plaintiffs' claims, falling under § 1.5, are subject to arbitration.

Plaintiffs also argue that Defendant breached the individual Employment Agreements. It is clear from the language of the SPA that the Employment Agreements were contemplated by the contract, and thus are also arbitrable. Section 1.5 of the SPA states that "[u]nless otherwise specified in an Employment Agreement . . . a participant must be employed by L&P or any of its

5

subsidiaries on June 30 of each year to be eligible for receipt of a bonus payout." By mentioning the Employment Agreements in the text of the SPA, there can be no other conclusion than that they are agreements "contemplated" by the SPA. Therefore, Plaintiffs' claims arising from the Employment Agreements are subject to arbitration, as provided by § 8.15 of the SPA.

In order to resolve whether Plaintiffs' claims for slander, tortious interference, and bad faith are arbitrable, it is necessary to determine whether the factual allegations underlying the claims fall within the arbitration provision in the SPA. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). The arbitration clause plainly requires that all claims "arising out of or relating to this Agreement or any agreement contemplated hereby shall be settled by binding arbitration." (R. 6, SPA at § 8.15.) "Broad arbitration clauses, such as the one in the case before us, necessarily create a presumption of arbitrability." *Kiefer*, 174 F.3d at 910 (stating that arbitration provision, contemplating that all claims "arising out of or relating to" the agreements between the parties would be settled by arbitration, was to be construed broadly).

The court held in *Kiefer* that it was by no means a stretch to conclude that the plaintiff's tortious interference claim against the defendant arose out of their distributorship agreements. *Id.* The *Kiefer* court, noting that the very same facts underlying the tortious interference claim were the basis of the plaintiff's interference with contract claim, explained that "it would certainly seem illogical . . . for us to conclude that the sole underlying act at issue . . . could result in some claims that were arbitrable and some that were not. This conclusion would result in the issue of the arbitrability of a particular claim turning on the label – 'tort' or 'contract' – a party chose to affix to the claim." *Id.* The Seventh Circuit has routinely held that a party may not avoid a contractual arbitration clause merely by "casting its complaint in tort." *Id.* (citing *Sweet*

6

*Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993)) (further citations omitted).

A broad arbitration clause such as the one contained in the SPA "necessarily create[s] a presumption of arbitrability," because the clause embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute. *Kiefer*, 174 F.3d at 910. Plaintiffs' complaint makes clear that all of their claims relate to their contractual relationship with Defendant, under the SPA and the Employment Agreements. For example, Plaintiffs' tortious interference claim states that Defendant directed "Met to fire Met Management 'with cause' but for Sharon Abinanti." (R. 6, Pls.' Resp., Ex. A Verified Compl. ¶ 39(f).) Plaintiffs' slander claim states that Defendant "published to the Illinois Unemployment Commission untrue statements of purported misconduct on the part of some of the Plaintiffs." (*Id.* at ¶ 43(a).) But for the SPA and the Employment Agreements, Plaintiffs' claims would never have arisen. They arise from the very heart of their relationship with Defendant. *See Kiefer*, 174 F.3d at 910. Therefore, they are logically "contemplated" by the SPA and are subject to arbitration pursuant to § 8.15.

Finally, even if we were to conclude that Plaintiffs' tortious interference, bad faith, and slander claims were outside the arbitration provision, this Court should still stay litigation pending arbitration of the breach of contract claim. *Air Freight Servs., Inc. v. Air Cargo Transp., Inc.*, 919 F. Supp. 321, 324 (N.D. Ill. 1996) (citing *C. Itoh & Co. (America) Inc. v. Jordan Int'l Co.*, 552 F.2d 1228, 1230-32 (7th Cir. 1977)). The fact that some of the issues involved in the case are arbitrable is enough to require the entire case to be stayed pending arbitration of those issues. *Air Freight Servs.*, 919 F. Supp. at 325 (citing 9 U.S.C. § 3; *Kroll v. Doctor's Associates,*

*Inc.*, 3 F.3d 1167, 1171 (7th Cir. 1993); *Mages v. Thrifty Corp.*, 916 F.2d 402, 406-08 (7th Cir. 1990); *Itoh*, 552 F.2d at 1230-32).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay Trial and to Compel Arbitration is granted. (R. 4-1, 4-2.) These proceedings are stayed until such time as arbitration has been had in accordance with the terms of the Stock Purchase Agreement.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: January 12, 2001